BRANCART & BRANCART
  Christopher Brancart (SBN 128475)
  Liza Cristol-Deman (SBN 190516)
Post Office Box 686
Pescadero, California 94060
Tel:     (650) 879-0141
Fax:    (650) 879-1103

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICK FITZGERALD, DANIEL YU, AND SAROEUN "DECLAN" RATH, minor, by his guardian ad litem, DANIEL YU; each individually and on behalf of the GENERAL PUBLIC, <br><br> Plaintiffs, <br><br> vs. <br><br> ROBERT CASSIL, individually and as Trustee under that certain Trust Agreement dated April 1, 1997, HAWTHORNE/STONE REAL ESTATE INVESTMENTS, INC., and DONALD SIMMONS, <br><br> Defendants. | Case No. CV-02-3857 CW <br><br> COMPLAINT FOR MONETARY, DECLARATORY AND INJUNCTIVE RELIEF; DEMAND FOR TRIAL BY JURY |

## I. INTRODUCTION

1.     In this action, plaintiffs seek monetary, declaratory and injunctive relief against defendants for discriminating against families with children based on their familial status in the ownership and management of the apartment complex located at 1 through 8 Gaiser Court, 417 through 427 Guerrero Street, and 3165 through 3199 16th Street, in San Francisco, California ("the Gaiser Court Apartments"), in violation of federal and state fair housing laws.

## II.  JURISDICTION AND VENUE

2.     Jurisdiction is conferred upon this Court pursuant to 28 U.S.C. section 1331 in that the claims alleged herein arise under the laws of the United States.  This Court has supplemental jurisdiction pursuant to 28 U.S.C. section 1367 to hear and determine plaintiffs' state law claims because those claims are related to plaintiffs' federal law claims and arise out of a common nucleus of related facts.  Plaintiffs' state law claims are related to plaintiffs' federal law claims such that those claims form part of the same case or controversy under Article III of the United States Constitution.

3.     Venue is proper under 28 U.S.C. section 1391 in that the claims alleged herein arose within this district.

## III.  INTRADISTRICT ASSIGNMENT

4.     This action is properly assigned to the San Francisco Division of the United States District Court for the Northern District of California because the claims alleged herein arose within the City and County of San Francisco, California.

## IV.  PARTIES

5.     Plaintiffs Patrick Fitzgerald ("Mr. Fitzgerald") and Daniel Yu ("Mr. Yu") are registered domestic partners in the State of California.  On or about October 6, 1994, they signed a lease for and moved into the apartment located at number 2 Gaiser Court at the Gaiser Court Apartments.  They have lived at 2 Gaiser Court continually since that date.

6.     Saroeun Rath, now known as Declan Fitzgerald-Yu, is the adoptive son of Daniel Yu.  Declan's date of birth is June 30, 2000.  On December 14, 2000, after the adoption was finalized, Declan came to live with Mr. Fitzgerald and Mr. Yu in their apartment at 2 Gaiser Court.  Declan is represented herein by his adoptive father and guardian ad litem, Daniel Yu.

7.     Plaintiffs bring this action on behalf themselves and as representatives of the General Public pursuant to California Business and Professions Code section 17204.

8.     The Gaiser Court Apartments are held in trust.  Plaintiffs are informed and believe and allege thereon that defendant Robert Cassil is the sole trustee under that

certain Trust Agreement dated April 1, 1997. The Gaiser Court Apartments contain three separate buildings with approximately 28 dwelling units. Defendant Robert Cassil is sued herein individually and as the trustee of that certain Trust Agreement dated April 1, 1997.

9. Defendant Hawthorne/Stone Real Estate Investments, Inc. ("Hawthorne/Stone") is a California corporation. Plaintiffs are informed an believe and thereon allege that Hawthorne/Stone Real Estate Investments, Inc. has been employed at all times relevant herein to supervise the operation and management of the Gaiser Court Apartments. The registered agent and officer of Hawthorne/Stone Real Estate Investments, Inc. is Rob Cassil.

10. Defendants Robert Cassil and Hawthorne/Stone employ resident managers to assist in the operation of the Gaiser Court Apartments. Defendant Donald Simmons ("Mr. Simmons") is the current resident manager of Gaiser Court Apartments. Mr. Simmons resides at the Gaiser Court Apartments. Mr. Simmons has been the resident manager during all times relevant herein.

11. At all times relevant herein, each of the defendants was the agent, employee and representative of each of the other defendants; each defendant, in doing the acts or in omitting to act as alleged in this complaint, was acting within the course and scope of his actual or apparent authority pursuant to such agency; or the alleged acts or omissions of each defendant as agent were subsequently ratified and adopted by each other defendant as principal.

## V. FACTS

### A. INTRODUCTION

12. Defendants have engaged in a pattern or practice of discrimination against families with children in the operation of the Gaiser Court Apartments. Defendants, acting individually and in concert with others, directly and through agents, have discriminated against families with children in the operation of the Gaiser Court Apartments. Defendants continue to engage in such a pattern or practice of discrimination so as to constitute a continuing violation.

13. Defendants' pattern or practice of discrimination against families with children includes, but is not limited to:

      A.    Limiting the use of privileges, services or facilities associated with a dwelling because of familial status;

      B.    Promulgating and enforcing unreasonably restrictive rules with the purpose or effect of excluding families with children from the Gaiser Court Apartments and/or from the use and enjoyment of the premises;

      C.    Expressing to agents, employees, prospective renters or any other persons a preference for or limitation on any renter because of familial status; and,

      D.    Interfering with persons in their enjoyment of a dwelling because of familial status.

14. Defendants' discriminatory policies have been perpetuated by defendants' negligent failure to hire, train, properly supervise and discipline themselves and their managers, employees and agents at the Gaiser Court Apartments regarding their duties under federal and state fair housing laws.

### B. THE COMPLAINT OF MESSRS. FITZGERALD & YU

15. On or about October 6, 1994, Mr. Fitzgerald and Mr. Yu moved into number 2 Gaiser Court at the Gaiser Court Apartments. That apartment has two bedrooms, a living room, a dining room, one bathroom, and a kitchen. Mr. Fitzgerald and Mr. Yu have lived at 2 Gaiser Court continually since October 6, 1994.

16. In or about September of 2000, Mr. Fitzgerald and Mr. Yu began the process of adopting Saroeun Rath, who was born in Cambodia. Mr. Fitzgerald and Mr. Yu told some of their friends and neighbors, including their apartment manager Donald Simmons, that they were adopting a baby. Mr. Simmons stated that he did not want children in the complex. A woman named Carol, whom plaintiffs are informed and believe and thereon allege is Mr. Simmons' wife, stated that Mr. Simmons did not like having children around, especially small children.

17.    Mr. Yu's adoption of Saroeun Rath became final in early December of 2000. Saroeun Rath, who is now known by the name Declan Fitzgerald-Yu, came to live with Mr. Fitzgerald and Mr. Yu on December 14, 2000.  At the time, Declan was approximately five months old.  When Declan moved in, Mr. Simmons stated to Mr. Fitzgerald and Mr. Yu, "you're not planning to stay here, are you?" or words to that effect.  Mr. Simmons stated that there was not enough room for a child to live in Mr. Fitzgerald and Mr. Yu's apartment, and that he hoped they would move out by the time the baby began to walk.  Mr. Simmons also stated that he did not want Declan to play in the Gaiser Court courtyard.  The Gaiser Court courtyard is an outdoor, paved area between the buildings in the complex which is the only common area in the complex.

18.    Mr. Simmons made comments to Mr. Fitzgerald and Mr. Yu on several other occasions indicating that he they should move out of the Gaiser Court Apartments because of their familial status.  Mr. Simmons asked when they were planning to move on more than one occasion, even after Mr. Fitzgerald and Mr. Yu told Mr. Simmons that they did not intend to move out of their apartment.

19.    On or about May 31, 2001, Mr. Fitzgerald called Hawthorne/Stone to complain about Mr. Simmons.   Mr. Fitzgerald informed Sharon, an employee at Hawthorne/Stone, that Don was harassing him because of Mr. Fitzgerald's familial status. Mr. Fitzgerald asked Sharon to have Mr. Cassil call him back.  Mr. Cassil called Mr. Fitzgerald back.  Mr. Fitzgerald then stated to Mr. Cassil that Mr. Simmons had made statements indicating that he did not want a child in the Gaiser Court Apartments.  Mr. Fitzgerald also stated that he believed Mr. Simmons had become hostile and rude to Mr. Fitzgerald and Mr. Yu since Declan came to live with them.  Mr. Cassil stated that he would speak with Mr. Simmons.  Plaintiffs are unaware of whether Mr. Cassil did in fact speak with Mr. Simmons or discipline him in any way.  Regardless, Mr. Simmons continued to make discriminatory statements to Mr. Fitzgerald and Mr. Yu.

20.    On or about March 3, 2002, a Sunday afternoon, Mr. Simmons observed Declan riding inside a plastic, toy car in the Gaiser Court courtyard. Mr. Fitzgerald was with

Declan at the time.   Mr. Simmons opened his apartment window, which faces the courtyard, and asked Mr. Fitzgerald, "Does he have to do that?" or words to that effect. Mr. Simmons further stated to Mr. Fitzgerald, "I told you I didn't want him playing in the courtyard," or words to that effect.   Mr. Fitzgerald asked Mr. Simmons why he would not allow Declan to play in the courtyard.   Mr. Simmons stated that it was "distracting" to him. He reiterated that he did not want Declan to play in the courtyard.

21.   On or about March 12, 2002, Mr. Simmons observed Declan and Mr. Fitzgerald walking in the courtyard, carrying Declan's toy car.   They were on their way to play on the sidewalk on Guerrero, in front of the complex.   In a loud voice, Don stated, "I told you we don't want him playing in the courtyard," or words to that effect.   Mr. Fitzgerald asked Mr. Simmons who did not want Declan playing in the courtyard.   Mr. Simmons replied, "I don't want him playing in the courtyard.   I've told you that since Day One," or words to that effect.   Mr. Simmons then slammed his window closed.

22.   On or about March 24, 2002, Mr. Simmons observed Declan riding in the toy car in the courtyard.   Mr. Fitzgerald and a neighbor were walking alongside Declan.   Mr. Simmons opened his apartment window and stated to Mr. Fitzgerald, "I thought I told you not to have him play in the courtyard," or words to that effect.   Mr. Fitzgerald stated that he had never seen any rule or provision in his lease prohibiting children from playing in the courtyard.   Mr. Simmons replied "I don't want him riding that fucking thing in the courtyard. It makes too much noise," or words to that effect.

23.   As a result of the discriminatory statements made by Mr. Simmons, Mr. Fitzgerald wrote a letter to Robert Cassil, dated March 25, 2002.   That letter stated, in pertinent part, "I am writing to make a formal complaint against Don, for an ongoing pattern of verbal harassment and abuse relating to our having a child."   Mr. Fitzgerald then described the incident of March 24, 2002.   Mr. Fitzgerald also stated "there have been several incidents recently where Don has spoken to us in a belligerent and threatening tone of voice.   The harassment continues and Don has begun to use obscene language towards us and our child.   Please respond to us as soon as possible about this.   We wish

to live peacefully in our home."

24.    Mr. Fitzgerald and Mr. Yu received a letter from Mr. Cassil dated March 29, 2002, which stated, in pertinent part:

"I am in receipt of your letter dated March 25, 2002, and can appreciate the fact that your child would like to ride his toy car in the courtyard.  However, I would like to point out the fact that your apartment was leased to two people, and having a child live there is in violation of your lease agreement.  Considering that you have been an excellent resident for a long time, I did not object to your addition of a child, but did ask you to be sensitive to keeping the noise down because the building is mainly occupied by adults."

25.    Mr. Simmons has continued to make comments to Mr. Fitzgerald and Mr. Yu indicating that Declan is not welcome in the Gaiser Court Apartments, including but not limited to stating that he may not play in the courtyard.

### C.  INVESTIGATION BY PROJECT SENTINEL

26.    On or about March 4, 2002, Mr. Yu contacted the San Francisco Human Rights Commission to lodge a complaint against the owners and managers of the Gaiser Court Apartments for discriminating based on familial status.  The San Francisco Human Rights Commission referred Mr. Yu to Project Sentinel, the non-profit fair housing agency that provides fair housing counseling and investigative services to San Francisco residents.  On the same day, Mr. Yu contacted Project Sentinel.

27.    Project Sentinel investigated Mr. Yu's complaint by using fair housing testers to gather evidence about the operation of the Gaiser Court Apartments.  That investigation revealed that defendants discriminate against families with children in the operation of the Gaiser Court Apartments in violation of federal and state fair housing laws.

28.    On March 5, 2002, a Project Sentinel staff member posing as a mother with one child who was interested in renting an apartment at the Gaiser Court Apartments contacted Hawthorne/Stone.  A woman who identified herself as Shelley answered the phone.  The Project Sentinel staff member asked about the apartment available for rent.

Shelley stated that the apartment had three bedrooms, a living room, and a kitchen. She stated that it was located at 16th Street and Guerrero. The Project Sentinel staff member stated that she had a child, and that she had noted that the "for rent" sign posted in front of the complex stated "very quiet." The staff member asked Shelley if that meant that no children were allowed in the complex. Shelley replied that she "thought" there were other children living there. She then provided the tester with the telephone number for Don Simmons, the resident manager.

29.   On March 14, 2002, a fair housing tester posing as a married man who had custody of a grandchild ("Tester 1") went to the office of Hawthorne/Stone and obtained an application to rent an apartment at the Gaiser Court Apartments. Tester 1's completed rental application was faxed to the office of Hawthorne/Stone at 11:10 a.m. on March 25, 2002.

30.   On March 20, 2002, a fair housing tester posing as a married man with no children ("Tester 2") went to the office of Hawthorne/Stone and obtained an application to rent an apartment at the Gaiser Court Apartments. Tester 2's completed rental application was faxed to the office of Hawthorne/Stone at 12:10 p.m. on March 25, 2002.

31.   On March 26, 2002, a woman who stated that her name was Karen and she was calling from Hawthorne/Stone contacted Tester 1. Karen informed Tester 1 that his wife needed to fill out a separate rental application. Tester 1 stated that he and his wife were separating, and that he would be living only with his three-year old granddaughter.

32.   On March 27, 2002, a woman who stated that her name was Karen and that she was calling from Hawthorne/Stone contacted Tester 2. Karen informed Tester 2 that his wife needed to complete a separate rental application. Tester 2 asked Karen to fax him another application for his wife to complete. Karen faxed him another application. On March 28, 2002, Tester 2's wife's completed application was faxed to the office of Hawthorne/Stone.

33.   On March 28, 2002, Karen called Tester 1 and stated that his application had been approved, but that the apartment had been offered to another applicant who

submitted his application before Tester 1.

34.    On March 29, 2002, a woman posing as Tester 2's wife called Karen to confirm that her application had been received. Karen stated that it had been received, but that she had not yet checked their credit and verified the information with their employers.

35.    On March 29, 2002, the woman posing as Tester 2's wife called Karen to inquire about the status of her application. Karen stated that their applications had been approved, and they could come and sign the lease agreement. The woman posing as Tester 2's wife stated that she and Tester 2 would move in on April 6, 2002, and asked Karen to fax the rental agreement. Karen agreed, and subsequently faxed a lease for Tester 2 and his wife to sign.

36.    On April 1, 2002, the woman posing as Tester 2's wife called Karen to say that she and Tester 2 were not going to be able to move into the apartment.

37.    Later the same day, Karen called Tester 1 and stated that the first applicant had fallen through. She then stated that Tester 1 could move into the apartment if he was still interested.

### D.  INJURIES

38.    By reason of defendants' unlawful acts and practices, Mr. Fitzgerald and Mr. Yu have suffered loss of housing, violation of their civil rights, violation of the covenant of quiet enjoyment, invasion of the private right of occupancy, and emotional distress and attendant bodily injury, including headaches and sleep loss, and other special and general damages according to proof. Declan has suffered loss of housing, violation of his civil rights, violation of the covenant of quiet enjoyment, and invasion of the private right of occupancy. Accordingly, plaintiffs are entitled to compensatory damages.

39.    In doing the acts of which plaintiffs complain, defendants and their agents and employees acted with oppression, fraud and malice, and with wanton and conscious disregard of the rights of plaintiffs. Accordingly, plaintiffs are entitled to punitive damages.

40.    There now exists an actual controversy between the parties regarding defendants' duties under the federal and state fair housing laws. Accordingly, plaintiffs are

entitled to declaratory relief.

41.     Unless enjoined, defendants will continue to engage in the unlawful acts and the pattern and practice of discrimination described above.  Plaintiffs have no adequate remedy at law.  Plaintiffs are now suffering and will continue to suffer irreparable injury from defendants' acts and the pattern or practice of discrimination against families with children unless relief is provided by this Court.  Accordingly, plaintiffs are entitled to injunctive relief.

## VI.  CLAIMS

### A.  FIRST CLAIM

### [Fair Housing Act]

42.     Plaintiffs reallege and incorporate by reference paragraphs 1 through 41 of the complaint herein.

43.     Defendants have injured plaintiffs in violation of the federal Fair Housing Act, 42 U.S.C sections 3601 et seq..

### B.  SECOND CLAIM

### [California Fair Employment and Housing Act]

44.     Plaintiffs reallege and incorporate by reference paragraphs 1 through 41 of the complaint herein.

45.     Defendants have injured plaintiffs in violation of the California Fair Employment and Housing Act, Government Code sections 12927 and 12955 et seq.

### C.  THIRD CLAIM

### [California Unruh Civil Rights Act]

46.     Plaintiffs reallege and incorporate by reference paragraphs 1 through 41 of the complaint herein.

47.     Defendants have injured plaintiffs in violation of the Unruh Civil Rights Act, California Civil Code section 51 et seq., by operating the Gaiser Court Apartments and Hawthorne/Stone Real Estate Investments, Inc., which are both business establishments, in a manner that discriminates against families with children because of their familial status and the age of the children.

### D.  FOURTH CLAIM

### [Unfair Business Practices]

48.     Plaintiffs reallege and incorporate by reference paragraphs 1 through 41 of the complaint herein.

49.     In acting as herein alleged, defendants have engaged in a pattern or practice of unlawful discrimination in the operation of the Gaiser Court Apartments and Hawthorne/Stone Real Estate Investments, Inc., both of which are business establishments, and therefore have engaged in acts of unfair competition as the same is defined in section 17200 of the Business & Professions Code.

50.     In bringing this action for injunctive relief, plaintiffs are acting in the interest of themselves and the General Public pursuant to the California Business and Professions Code section 17204.

### E.  FIFTH CLAIM

### [Breach of the Covenant of Quiet Enjoyment]

51.     Plaintiffs reallege and incorporate by reference paragraphs 1 through 41 of the complaint herein.

52.     By depriving plaintiffs of the full use and enjoyment of their rental dwelling, and implicitly threatening plaintiffs with adverse consequences if plaintiffs did not abide by defendants' discriminatory rules, defendants breached the covenant of quiet enjoyment.

53.  Defendants knew or should have known that plaintiffs would suffer anxiety or hardship as a result of defendants' breach of that covenant.

54.     As a result of defendants' actions, plaintiffs lost valuable property interests in the safe and quiet enjoyment of their home.

55.     As a result of defendants' breach of the covenant of quiet enjoyment, plaintiffs have suffered injuries as alleged herein and are entitled to damages in an amount according to proof.

///

///

## F.  SIXTH CLAIM

### [Negligence]

56.     Plaintiffs reallege and incorporate by reference paragraphs 1 through 41 of the complaint herein.

57.     Defendants owed each plaintiff a duty of care in the operation of the Gaiser Court Apartments and Hawthorne/Stone Real Estate Investments, Inc.   Defendants negligently violated that duty by discriminating against families with children on account of their familial status.   Defendants' violation of that duty was the result of negligence, including but not limited to:

> A.     Defendants' negligent failure to hire persons who were familiar with the requirements of state and federal fair housing laws;

> B.     Defendants' negligent failure to supervise their employees regarding compliance with the requirements of state and federal fair housing laws;

> C.     Defendants' negligent failure to discipline or terminate employees who failed to comply with the requirements of state and federal fair housing laws;

> D.     Defendants' negligent failure to follow standard, recognized rental practices of the community; and/or,

> E.     Defendants' negligent failure to exercise the ordinary and reasonable care and diligence required of a housing provider in the operation and management of the Gaiser Court Apartments.

58.     As a legal result of defendants' negligent conduct, plaintiffs have suffered loss of important housing opportunity, violation of their civil rights, deprivation of the full use and enjoyment of their tenancies, violation of the covenant of quiet enjoyment, invasion of the private right of occupancy.   Plaintiffs Patrick Fitzgerald and Daniel Yu also have suffered emotional distress and attendant bodily injury.

## VII.  RELIEF

Wherefore, plaintiffs pray for judgment against defendants as follows:

1.      That the Court enjoin all unlawful practices complained about herein and impose affirmative injunctive relief requiring defendants, their partners, agents, employees, assignees, and all persons acting in concert with or participating with them, to take affirmative action to provide equal housing opportunities to all tenants and prospective tenants without regard to familial status;

2.      That the Court declare that defendants have violated the provisions of the applicable federal and state fair housing laws;

3.      That the Court award compensatory and punitive damages to plaintiffs according to proof;

4.      That the Court award up to three times the amount of actual damages for each plaintiff against each defendant pursuant to the Unruh Civil Rights Act;

5.      That the Court grant costs of suit, including reasonable attorneys' fees; and,

6.      That the Court grant all such other relief as the Court deems just.

Dated:  August 8, 2002.

BRANCART & BRANCART

_____
Liza Cristol-Deman
Attorneys for Plaintiffs

## VII.  JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, plaintiffs hereby request a jury trial.

Dated:  August 8, 2002.

BRANCART & BRANCART

_____
Liza Cristol-Deman
Attorneys for Plaintiffs